No. 30,235.

J. W. Barry, *Appellant*, v. Peter T. Cheuvront et al., *Appellees.*

(12 P. 2d 823.)

Opinion filed July 9, 1932.

*J. E. Addington, Howard A. Jones, Randal C. Harvey* and *Paul L. Harvey,* all of Topeka, for the appellant.

*J. J. Schenck* and *C. P. Schenck,* both of Topeka, for the appellees.

The opinion of the court was delivered by

Dawson, J.: This was an action for damages for alienation of affections.

Plaintiff was a lawyer residing in St. Louis, Mo. Defendants were Peter T. Cheuvront, a lumber dealer in Dover, Kan., and Garland James, a brother of plaintiff's wife, who resided with his codefendant. Cheuvront was an elderly widower whose deceased wife had been an aunt of plaintiff's wife.

Prior to her first marriage to plaintiff Mrs. Barry had been married twice—once to a man whose name may have been Loganbill, as the woman had a daughter, Darlene Loganbill, aged 14 years when she gave a deposition in this lawsuit. Mrs. Barry's second marriage venture was with a man named Frew. Plaintiff acted as attorney for her when she obtained a divorce from Frew. That divorce was granted on October 18, 1928, and plaintiff married her

the following day in Waterloo, Ill.—concededly a lawful marriage under Missouri law.

This third marital venture for the woman met an early shipwreck when plaintiff obtained a divorce from her in June, 1929. But after a month's celibacy hope triumphed once more over experience, and plaintiff and his ex-wife were remarried on July 12, 1929. This last marriage was no more successful or enduring than the preceding venture; and on December 13, 1929, Mrs. Barry and her daughter left plaintiff's domicile in St. Louis. By telephone arrangement she met defendant Cheuvront at St. Charles, Mo., and accompanied him to Dover, where she and her daughter took up their abode for some time in Cheuvront's home, in which her brother also resided.

Plaintiff's petition alleged that following his last marriage on July 12, 1929, he and his wife lived harmoniously for a month or two, until defendant Cheuvront commenced a correspondence with her. The volume of this correspondence increased during the months of October and November and the early part of December, by which time defendant was writing to Mrs. Barry several letters each week. Plaintiff had never read any of these letters, but he alleged that in them defendant Cheuvront urged Mrs. Barry to quarrel with plaintiff, to make unreasonable demands on him, to leave him, and to cease to live with him as his wife.

"Said Grace E. Barry after the commencement of such correspondence, and as a result thereof, became discontented with her marriage to the plaintiff, and quarreled with him without provocation, and demanded of plaintiff that he furnish her funds to leave St. Louis and to join the defendants at Dover, Kan., at Kansas City, Mo., and in the state of California, and at other places."

Plaintiff also alleged that Cheuvront and his codefendant, Garland James, repeatedly solicited Mrs. Barry to leave plaintiff and to join them in Dover, Kan.:

". . . And on the 12th day of December, 1929, defendant Peter T. Cheuvront called the said Grace E. Barry on the long-distance telephone from Dover, Kan., and talked to her for nine minutes, urging her to leave plaintiff and come to Dover, Kan.; and directed that the cost of said call be charged to plaintiff, John W. Barry. Thereafter, and on the next day, December 13, 1929, and as a direct result of the solicitations of said defendant, the said Grace E. Barry did leave the plaintiff, and proceeded immediately to the home of defendant Peter T. Cheuvront in Dover, Kan., and defendants furnished and procured the transportation of said Grace E. Barry from the home of plaintiff in St. Louis, Mo., to their home in Dover, Kan."

Plaintiff also alleged that defendants conspired and confederated

together to conceal from plaintiff the whereabouts of Mrs. Barry, and persuaded her not to write to plaintiff and to refrain from disclosing to him her whereabouts. It was also alleged that plaintiff wrote to Cheuvront stating he had been informed that he was keeping Mrs. Barry in Dover, and plaintiff demanded that defendant should forthwith terminate her stay in defendant's home to the end that she might return to plaintiff; that this letter was transmitted to Cheuvront by United States mail, but he ignored the letter and thereby refused to comply with plaintiff's request. Plaintiff also alleged that—

"Between December 13, 1929, and the present time, plaintiff has written a number of letters to his wife, Grace E. Barry, in care of defendant Peter T. Cheuvront, at Dover, Kan., and the defendants herein have persuaded and induced the said Grace E. Barry to return the said letters unopened to the plaintiff, and the said letters have been so returned marked 'Refused' and 'Not here,' both of which markings are in the handwriting of said Grace E. Barry."

It was also alleged that by solicitations and correspondence defendants had caused Mrs. Barry to lose her love and affection for plaintiff, and had enticed her away, and had interfered with the marital relation of plaintiff and his wife; that they had harbored her and prevented her by persuasion and otherwise from returning to plaintiff, and that defendants' acts as above narrated were the procuring cause of the alienation of plaintiff's wife's affection for him, and that those acts were willful, malicious and done with intent to injure the plaintiff.

It was finally alleged that until the affections of his wife were alienated as aforesaid, plaintiff was a successful lawyer in St. Louis; but because of being deprived of his wife's companionship and affection his nerves had become affected, and it had become impossible for him to concentrate his attention on business, to his loss and damage in the sum of $25,000, for which sum and for an additional like amount as punitive damages he prayed judgment against defendants.

Defendants' answer was a general denial. On the issues thus made the cause was heard by the court. At the close of plaintiff's evidence, which included some significant facts elicited in cross-examination of plaintiff and certain witnesses who testified in his behalf, the trial court sustained a demurrer to the evidence and entered judgment for defendants.

Plaintiff assigns error, contending that the evidence was sufficient to withstand a demurrer. Defendants, on the other hand, contend that no evidence was adduced to support the material allegations of plaintiff's petition. Looking into these allegations in detail, plaintiff alleged that he and his wife lived harmoniously together until defendants Cheuvront and James began to meddle in their affairs. James was a brother of Mrs. Barry, and it is now conceded in this appeal that the allegations of his wrongdoing were not supported by evidence. But there was apparently no evidence to show that plaintiff and his wife lived together more harmoniously after their second marriage than they did during their first marriage; and it appears that their marital discord during the periods of both their first and second marriages was occasioned because plaintiff's mother lived in their home and Mrs. Barry objected to that arrangement. On cross-examination plaintiff testified:

"Q. I will ask you if Mrs. Barry didn't say, on several different occasions, that she couldn't live there on account of the way she [plaintiff's mother] was treating her? A. To quote her words, she said, 'You will put her or me out.' She said this more than once.

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"Q. Was it during your first marriage or second marriage that she said your mother would have to leave? A. She said that both times."

Plaintiff and his wife had other troubles.

"Q. Do you remember the day before she left, of her playing the radio, and you went in and struck her because she wasn't playing the tune you wanted her to? A. I was ill the day before.

"Q. You were not unconscious? A. No, sir.

"Q. You knew what you were doing? A. Yes, sir."

The record fails to show the existence of the harmonious relations of husband and wife alleged in plaintiff's petition, and the excerpts just quoted go far to establish the contrary.

Touching the allegations that the letters from Cheuvront to Mrs. Barry urged her to quarrel with her husband and to leave him, it must be said that the record does not contain any evidence in support of those allegations. Even the allegation that Cheuvront called Mrs. Barry on the long-distance telephone the day before she left plaintiff's home was not quite in accord with the facts. Cheuvront did not call Mrs. Barry. On the contrary, she put in the call for her brother, not for Cheuvront. She wanted her brother to come to St. Louis for her. He had no automobile so it was arranged that Cheuvront should come for her. Both parties seem to attach importance

to this incident and particularly to the opening statement of counsel for appellee. Each litigant prints a part of it. Put together it reads:

"[Mrs. Barry's] parents at Versailles had no money. She had no money except the fifty cents she had borrowed, and she had no money to get to Versailles, Mo., and she called up her brother at Dover, and told him that her husband had beaten her and had driven her away from home, and that she was hungry, had nothing to eat and had no money, and asked her brother to come to St. Louis and get her. Her brother had no car, and she said, 'I wish you would call Uncle Pete's attention to this, and have him call me and reverse the call. I want to talk to him.'"

"Mr. Cheuvront was away at the time, and when he returned home Mrs. Barry's brother told Mr. Cheuvront about what had occurred, and Mr. Cheuvront did call her up by telephone and she told Mr. Cheuvront that she had been driven away from home and had no place to go and nothing to eat. Mr. Cheuvront went and got her and brought her back."

The record contains no suggestion of immoral relations between Cheuvront and Mrs. Barry, and in the oral argument counsel for plaintiff assured us that there was no claim of anything of that sort in this lawsuit. Cheuvront's interest in Mrs. Barry was apparently the natural one arising from the fact that his wife, but lately deceased, was Mrs. Barry's aunt. To Mrs. Barry and her daughter Cheuvront bore the familiar name of "Uncle Pete."

Touching plaintiff's complaint that neither of the defendants answered his letters inquiring about his wife, and demanding that they cease to harbor her, and the allegation in plaintiff's petition that they persuaded her not to return to plaintiff, it will have to be said that defendants owed plaintiff no duty to answer his letters—at least no duty the breach of which would render them liable to him in damages. Nor was it actionable that defendants declined to turn her out of the Dover home—the home of her own brother and of her uncle by marriage. And, we must repeat, there was not a scintilla of evidence to prove the allegation that either of defendants persuaded Mrs. Barry not to return to plaintiff.

Defendants' alleged concealment of the whereabouts of plaintiff's wife takes the odd form of a paralogism, as it is alleged that plaintiff's letters inquiring about her whereabouts were returned with the words "Refused" and "Not here" on the envelopes in Mrs. Barry's own handwriting. Of course, plaintiff was familiar with Mrs. Barry's handwriting, so the allegation that her whereabouts were concealed from him likewise failed for want of proof and because of its disproof.

It will thus be seen that on critical analysis every material allegation of plaintiff's petition lacked substantial support in the testimony.

Plaintiff complains because of the admission in evidence of a copy of a verified petition filed in St. Louis by Mrs. Barry against this plaintiff for a divorce, in which she charged him with various delinquencies—striking her on numerous occasions, ordering her out of his house, manifesting ungovernable temper, fault finding in respect to her cooking and the way she took care of his mother, humiliating and cursing her before other people, stopping the supply of groceries for the household, permitting his mother to accuse her of stealing, permitting his mother to dictate the management of the house, and telling her to get out.

Plaintiff objected vigorously to the admission of this *verified* petition in evidence, but the trial court let it in as evidentiary on the issue of the alleged harmonious relations of plaintiff and wife. On that issue it was competent. Counsel for appellant urge that this petition was filed several months after the incidents on which plaintiff's cause of action was founded. However, the matters alleged in Mrs. Barry's divorce petition had a very material bearing on one of the issues involved in this action—the alleged harmonious relations of plaintiff and wife, and whether that relationship was broken up by the wrongdoing of defendants or whether it was caused by the delinquencies of the plaintiff. In *Roesner v. Darrah*, 65 Kan. 599, 70 Pac. 597, it was said:

"In an action by a husband for damages for alienating the affections of his wife and for her seduction, it is error to reject evidence of the wife's declarations made to third persons prior to the alleged seduction, tending to disclose the state of her feelings towards her husband and towards the alleged seducer." (Syl. ¶ 2.)

If there had been a verdict and judgment against defendant in this case, the exclusion of the wife's petition for a divorce would have presented a serious legal question. Its admission, of course, would have helped the defendant and might have prevented a verdict against him. But here where a demurrer was sustained to plaintiff's evidence, and the only purpose of admitting it was the needless one of its possible contribution to *disprove* the allegations of plaintiff's petition, it could not possibly serve as a basis of prejudicial error.

As we regard this appeal, no questions of law are involved. The

sole question was whether plaintiff adduced sufficient evidence to withstand a demurrer, and that question we are constrained to answer in the negative. Consequently the judgment must be affirmed. It is so ordered.

HARVEY, J., not sitting.